**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| **JAMES E. ENGSTROM** and **RICHARD SHAW,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No.** |
| **UNITED AIRLINES MASTER EXECUTIVE COUNCIL** and **AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JAMES E. ENGSTROM ("Plaintiff Engstrom") and RICHARD SHAW ("Plaintiff Shaw") (collectively, "Plaintiffs") bring this action against Defendants United Airlines Master Executive Council ("UA MEC") and the Air Line Pilots Association, International ("ALPA") (collectively, "Defendants") and state as follows:

## INTRODUCTION

1.     This is an action by Plaintiffs against Defendants for discrimination (both disparate treatment and disparate impact) and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq* ("Title VII"); discrimination (both disparate treatment and disparate impact), failure to accommodate and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); discrimination (both disparate treatment and disparate impact), failure to accommodate, and retaliation and under the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq.* ("FCRA"); intentional infliction of emotional distress; and negligent infliction of emotional

distress.  Plaintiffs seek all available remedies under the law, including but not limited to injunctive and declaratory relief, compensatory damages, punitive damages, and reasonable attorney's fee and costs.

## JURISDICTION

2.      This action arises under federal statutes, Title VII and the ADA.

3.      This action also arises under Florida state statute, the FCRA, and Florida common law.

4.      This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

5.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case or controversy as the claims over which this Court has original jurisdiction.

## VENUE

6.      The venue of this Court over this controversy is proper based upon 28 U.S.C. § 1391(b)(2) and (d).  Specifically, a part of the events or omissions which transpired occurred within Orange County, Florida and Seminole County, Florida, counties which are within this Court's judicial district.  Moreover, Defendant ALPA maintain offices in Florida and both Defendants do business in multiple jurisdictions throughout the United States, including Orange County, Florida.

## THE PARTIES

7.      Plaintiff Engstrom is a citizen and resident of the state of Florida and county of Orange. He is a pilot for United Airlines and, at all relevant times hereto, a dues-paying member and member in good standing of ALPA and the local UA MEC chapter of ALPA.

8.     Plaintiff Shaw is a citizen and resident of the state of Florida and county of Seminole. He is a pilot for United Airlines and, at all relevant times hereto, a dues-paying member and member in good standing of ALPA and the local UA MEC chapter of ALPA.

9.     Defendant ALPA is a national labor union and was at all relative times the certified collective bargaining representative under the Railway Labor Act for Plaintiffs. 45 U.S.C. § 151, *et seq*.

10.     Defendant ALPA was at all relative times the certified collective bargaining representative for Plaintiffs Engstrom and Shaw, among other United Airlines pilots, under the Railway Labor Act for Plaintiffs. 45 U.S.C. § 151, *et seq*.

11.     As a labor union, Defendant ALPA is a "person" as defined by Title VII and is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, and national origin.

12.     Defendant ALPA is also a "labor organization" as defined by Title VII and is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, and national origin.

13.     At all times relevant to this action, Defendant ALPA had and has more than 25 members.

14.     Defendant ALPA is a "covered entity" as that term is defined by the ADA. Moreover, Defendant ALPA is a "person" and "labor organization" as defined by the ADA.

15.     As a labor union, Defendant ALPA is a "person" as defined by the FCRA and is

subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, national origin, and handicap.

16.     Defendant ALPA is also a "labor organization" as defined by the FCRA, as it is an organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or other mutual aid or protection in connection with employment. As such, Defendant ALPA is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, national origin, and handicap.

17.     Upon information and belief, Defendant ALPA's principal place of business is McLean, Virginia; however, Defendant ALPA also maintains offices in and does business in the state of Florida.

18.     Defendant UA MEC is a chapter within Defendant ALPA that was at all relative times the certified collective bargaining representative for Plaintiffs Engstrom and Shaw, among other United Airlines pilots, under the Railway Labor Act for Plaintiffs. 45 U.S.C. § 151, *et seq*.

19.     As a labor union, Defendant UA MEC is a "person" as defined by Title VII and is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, and national origin.

20.     Defendant UA MEC is also a "labor organization" as defined by Title VII and is subject to all applicable provisions of that statute, including those which prohibit discrimination

and retaliation against its members based on protected categories such as race, color, religion, sex, and national origin.

21.     Defendant UA MEC is a "covered entity" as that term is defined by the ADA. Moreover, Defendant ALPA is a "person" and "labor organization" as defined by the ADA.

22.     As a labor union, Defendant UA MEC is a "person" as defined by the FCRA and is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, national origin, and handicap.

23.     Defendant UA MEC is also a "labor organization" as defined by the FCRA, as it is an organization which exists for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or other mutual aid or protection in connection with employment. As such, Defendant UA MEC is subject to all applicable provisions of that statute, including those which prohibit discrimination and retaliation against its members based on protected categories such as race, color, religion, sex, national origin, and handicap.

24.     At all times relevant to this action, Defendant UA MEC had and has more than 25 members.

25.     Upon information and belief, Defendant UA MEC's principal place of business is  Rosemont, Illinois; however, Defendant UA MEC, through its membership, conducts business throughout multiple jurisdictions, including Florida.

26.     Plaintiffs have the capacity and standing to sue. Defendants have the capacity to be sued.  All conditions precedent have been satisfied.

## FACTUAL ALLEGATIONS

27.      When United Airlines ("United") announced a mandatory vaccination program for its unionized pilot workforce in August 2021, there was virtually no push back from the Defendants in this case, even though they were the sole collective bargaining representatives for United pilots and were in the process of negotiating a new contract under an expired collective bargaining agreement.

28.      Not only did Defendants fail to challenge the involuntary vaccination program which had a discriminatory impact on members due to religious beliefs and/or medical conditions, including Plaintiffs Engstrom and Shaw, but they also attempted to discourage its members from filing any grievances against the program.

29.      When grievances were filed by union members, Defendants limited the reach of those grievances so that the actual vaccine program would not be challenged.

30.      Defendants ultimately decided to cut off processing Plaintiffs' grievances notwithstanding the fact that Defendants had received legal interpretations indicating that the original grievances were well-founded and appropriate to challenge United's vaccine mandate.

31.      Defendants' actions were the culmination of a calculated effort, that lasted almost two years, to ensure that United's discriminatory vaccine mandate was enforced against Defendants' membership in order to maintain federal funding and support the political narrative established under the current administration.

32.      On or about April 15, 2020, United accepted approximately $5 billion in funding through the Federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The company benefited from additional infusions of money via follow-up federal programs such as the

Payroll Support Program and the American Rescue plan. The conditions attached to the receipt of these funds ultimately prohibited United from conducting layoffs, involuntary furloughs, or cutting the pay rates of employees until September 30, 2021, or until the funds were exhausted, whichever occurred later.

33.     At no time did Defendants demand an accounting from United as to the status of this fund, and, in particular, did not inquire about the status after United announced layoffs, pay cuts, and pilot terminations as part of its vaccination program. For example, Defendants provided nothing other than notice to the workforce when United management implemented WARN Act notices.

34.     Upon information and belief, Defendants supported United's receipt of federal funds and supported all COVID-19 initiatives undertaken by United in an effort to maintain this federal funding. This included a dramatic increase in United's line of credit shortly after United Chairman Kirby indicated his preference for 100% vaccination rates within the company. At a World Economic Forum meeting, Kirby also stated that he supported the White House effort to mandate vaccinations for virtually all of the federal and private sector workforce.

35.     At all times during the occurrence of the events noted in this Complaint, Defendants and United were operating under the terms of a lapsed collective bargaining agreement (the "United Pilots Agreement" or "UPA"). Under these circumstances, all parties were required by the Railway Labor Act to maintain the terms and conditions of the previous collective bargaining agreement until a new contract was signed.

36.     Notably, section 21-G of the lapsed collective bargaining agreement states, "There shall be no discrimination between employees covered by the [UPA] because of race, creed, color,

sex or national origin." Notably, such section does not prohibit discrimination based on religion, which is deemed a protected class by Title VII and the FCRA.

37. During the fall and early winter of 2020-21, Defendants negotiated several letters of agreement with United related to seniority and furlough mitigation. Specifically, Letter of Agreement ("LOA") 20-05 was negotiated with the company and then submitted to the union membership for ratification in accordance with Article XIII- Section 7 of the United MEC policy manual. That provision requires member ratification when an agreement between Defendants and United "substantially affects wages, working conditions."

38. On May 28, 2020, Defendants advised Plaintiffs and the United pilot membership that they should expect United management to try to unilaterally alter the UPA with respect to working conditions as a result of the COVID-19 pandemic and called for a unified front to forestall United management efforts.

39. Within two weeks of United CEO Kirby indicating that he expected mandatory workplace vaccinations to be in place, Defendants echoed his remarks in a memo to their membership on January 25, 2021. Defendants erroneously claimed that a vaccine mandate was contractually permissible (but offered no authority in the United Pilots' Agreement in support) and at the same time tried to minimize the possibility of individual exceptions based on religious or disability claims.

40. At no time did Defendants poll or discuss with their membership, including the Plaintiffs, whether they should oppose a vaccine mandate put in place by United management.

41.     In a letter signed by five other unions on January 28, 2021, Defendants lobbied congressional leaders for continued funding of the federal assistance and indicated their support for an aggressive public vaccination campaign.

42.     After the Federal funding for United continued, as part of the Payroll Support Program, on March 11, 2021, furlough layoff and pay reduction protection was extended until September 30, 2021, or until all the funds were expended, whichever was later. Notwithstanding this prohibition, Defendants, via a Letter of Agreement (LOA 21-02), assisted United management in instituting a two-tier system limiting compensation for unvaccinated pilots two months later, without submitting the LOA to United pilot membership as required.

43.     Following its adoption on May 25, 2021, United breached the terms of LOA 21-02 by requiring employees to justify their request for vaccine exemptions prior to the LOA's termination. Defendants did not challenge this breach but rather claimed the issue was of a "personal" nature and therefore between their union members and United.

44.     Moreover, the Defendants did nothing to stop United management from arbitrarily designating and increasing the number of airports and countries as "vaccination destinations" under the terms of LOA 21-02, thereby restricting the number of airports available to unvaccinated pilots and increasing the likelihood that they would suffer a financial penalty based on their vaccination status.

45.     LOA 21-02 also eliminated any requirement for pilots to divulge their vaccination status or to take the vaccine during the term of the letter agreement. Again, Defendants did nothing when United management began requiring such disclosures and mandating the shot before United management voided the agreement.

46.    In addition to its overall nonchalance about member rights with respect to vaccination, Defendants' senior leadership was personally hostile to union members who were unvaccinated. On May 27, 2021, Defendant UA MEC's chairman Todd Insler told a member who raised an objection to the emergency use authorization status of the vaccine to "go get a fucking shot and collect $4K or he can STFU".

47.    At the beginning of July 2021, United's CEO decided that he was going to initiate a vaccine mandate on his workforce. He decided this although United and Defendants were working under an expired UPA and federal law specifically prohibited un-bargained for major changes in the status quo in this circumstance. Defendants refused to raise this issue with United management when the program was implemented. Senior United officials later stated that the vaccine mandate and leave without pay furlough were not negotiated with Defendants, but rather were "socialized".

48.    United management also violated the UPA by sending postcards in the mail with individual employee vaccination status clearly available to anyone handling the postcard. Defendants did not raise an objection.

49.    On August 1, 2021, United management established its reasonable accommodation process ("RAP") for those employees who could not receive the vaccine due to religious beliefs or medical conditions. Although this was clearly a modification of the terms and conditions of employment covered by the UPA, Defendants raised no objection.

50.    United management announced the vaccine mandate on August 6, 2021. Although the mandate clearly altered the terms and conditions of employment for its members, Defendants did not raise an immediate objection, did not seek to block the mandate by going into

10

court or seeking arbitration under the Railway Labor Act, and did not take any other action to oppose the mandate program.

51.     In response to United management's declaration of a vaccine mandate, Defendants advised their members that the only objection to a mandatory vaccination program was an EEOC-based one and not something included under the UPA.

52.     Immediately after the announcement of the vaccine mandate, Defendants began advising their members that the mandate was a "job qualification" versus a "condition of employment." Defendants claimed that United may determine job qualifications unilaterally under the terms of the UPA. From that point forward, the Defendants actively opposed any attempt by their members to challenge the vaccine mandate.

53.     As part of its RAP, United began illegal inquiries into the religious practices of its employees who claimed religious exemptions from the vaccine mandate. This included Defendants' members. Although the UPA contained a specific provision allowing the Defendants to intervene on a pilot's behalf regarding matters of discrimination and violations of federal law, Defendants continued to take a hands-off stance in the face of these violations.

54.     In an effort to discourage vaccine exemptions and support United management by boosting vaccination numbers among its membership, Defendants distributed incorrect legal advice concerning the religious accommodation process, literally telling their members that in order to claim a proper religious accommodation they must be an adherent of a recognized religion with an established opposition to the vaccination process.

55.     On August 24, 2021, United pilots filed a grievance with the Chief Pilot Office of Defendants' Chicago operation. The grievance claimed Railway Labor Act Section 6 status quo

violations, contract violations, and LOA 21-02 violations. Other pilots began filing grievances opposing the vaccine mandate.

56.     In response to the filed grievances, Defendants deliberately altered their role in the grievance process by attempting to have the members "self-file" their grievances because the Defendants did not support the action. Pilot members who filed grievances against the vaccine mandate were told that the Defendants wanted nothing to do with the vaccine mandate grievances and prohibited Defendants' staff from arguing on behalf of the aggrieved pilots. Thus, for the Plaintiffs did not file grievances because doing so would be futile.

57.     Defendant ALPA, at least temporarily, recognized the issues with United's mandatory vaccine program when it noted in an article published in ALPA magazine on September 1, 2021, that ALPA "has been very clear that any vaccination requirements are an issue that must be bargained for and ultimately agreed to by each ALPA pilot group."

58.     After September 1, 2021, Defendants' leadership hardened against unvaccinated members who challenged the United vaccine mandate based on religious or medical reasons. Local chapter leadership of Defendants refused to accept individual member grievances as required by Defendants' policy. For example, on September 2, 2021, a Defendant official told a pilot member asking for assistance in filing a grievance opposing the RAP that, "ALPA has zero to do with that issue…Even if you are successful in the RAP, that doesn't mean you'll still be a pilot at United."

59.     Defendants failed to protest or otherwise raise an objection to the RAP enacted by United management on or about September 9, 2021, with a leave of absence provision that had no basis in, and in fact violated, the UPA.

60.     On September 10, 2021, Defendant MEC advised United's Senior Vice President for Operations that Defendants will not support the pilot vaccine mandate challenges.

61.     On or about September 11, 2021, a group of United employees, including Defendants' members, filed suit against United Airlines, Inc. in the United States District Court for the Northern District of Texas, Fort Worth Division, against United Airlines, Inc. (Case 4:21-cv-01074-P), challenging United's discriminatory COVID-19 policy.  Notably, Defendants did not assist its members who filed against United in the *Sambrano* action in any capacity despite its members' beliefs that United was violating their civil and contractual rights.

62.     On September 23, 2021, the initial hearing officer for the grievances opposing the vaccine mandate filed by individual pilots in Denver rejected their grievances. This was repeated across the country for all grievances opposing the vaccine mandate, and with no support for Defendants.  Thus, it was futile for Plaintiffs Engstrom and Shaw to file similar grievances.

63.     On September 28, 2021, ALPA filed an "instant grievance" on behalf of approximately 12 pilots, who were neither vaccinated nor had an approved RAP. The union took the position that it would not challenge the vaccine mandate, but rather requested that the company treat unvaccinated pilots as lacking qualification and therefore subject to limited discipline. In other words, the union argued that unvaccinated pilots were guilty of violating a company policy but that their penalty should be mitigated. The case went to an arbitrator for hearing on the issue of whether the mandate was a pilot qualification requirement or a term and condition of employment.

64.     On September 28, 2021, Defendant UA MEC's Chairman Insler, noting that American and Southwest unions are proposing work slowdowns, stated that it must be awkward

for those businesses that asked for exemptions and compensation from the Government while United's pilots were 100% vaccinated and did not need to deal with unvaccinated exemptions or disruptions.

65.     In its quarterly report on October 14, 2021, Defendants deliberately misstated the vaccine mandate as a job qualification versus a condition of employment.  This was done in an effort to obscure the fact that the vaccine mandate was indeed a bargainable issue under the terms of the UPA.  Moreover, such action was further proof of the Defendants intent to say that those members who received exemptions to the COVID-19 vaccination were no longer qualified to hold their positions.

66.     The lack of Defendants involvement with the vaccine mandate and its impact on members, such as the Plaintiffs and other United pilots, was questioned by the Judge assigned to the *Sambrano* case.  As a result, on October 15, 2021, Marcus Miliore, Senior Managing Attorney of Defendant ALPA's Legal Department, issued a letter to the attorneys in the *Sambrano* case in which he formally described the Defendants' position and responsibilities with respect to their members potential claims of discrimination against United as a result of its COVID-19 vaccination policies and reasonable accommodations process under both Title VII and the ADA.

67.     According to Mr. Miliore, the "separate accommodations process is outside of the RLA and is nowhere addressed in ALPA's collective bargaining agreement with United.  ALPA therefore has no representative authority or role determining what is a 'reasonable' accommodation."  Mr. Mililore further stated that "in its prescribed role as collective bargaining representative under the RLA, ALPA has no basis for objecting to accommodations offered by United that do not violate the United Pilot Agreement (UPA) or the rights of our other members

working under that collective bargaining agreement, and that do not negatively impact the safety of United's operation. The current accommodations offered by United to the involved pilots are consistent with the terms of the UPA and do not violate it."

68.     Shortly after the issuance of the above-described letter Mr. Migliore, United began terminating Defendants' members from employment beginning on or about November 1, 2021. In addition, all remaining unvaccinated pilots were forced on unpaid leave starting on November 11, 2021.

69.     In December 2021, because the Defendants wrongfully claimed they could not assist and were not responsible for claims of discrimination by their membership, Plaintiff Engstrom and Plaintiff Shaw filed formal Charges of Discrimination against United for discrimination and retaliation in violation of Title VII, the ADA, and the FCRA.

70.     In December 2021, United SVP Quigley denied the "self-filed" grievances of individual United pilots; they appealed to Defendant MEC's grievance panel for a decision to take the cases to arbitration.

71.     On February 15, 2022, the grievance system board of adjustments arbitrator rendered an opinion on the September 28, 2021 "instant grievance" filed by Defendants. The arbitrator found that the vaccine mandate was not a "pilot qualification" issue. The decision put Defendants on notice that the vaccine mandate is, in fact, a term or condition of employment likely subject to Section 3 or Section 6 arbitration under the Railway Labor Act.

72.     On March 11, 2022, Defendants' grievance review board denied the United pilots' grievance from moving forward to the system board of adjustment where the "terms and conditions of employment" argument could be raised formally through the parties' grievance system.  Again,

15

any challenge to same through formal grievance by Plaintiffs Engstrom, Plaintiff Shaw, or any similar situated pilot would be futile.

73.     Defendants' decision effectively ended the ability of member pilots to challenge the vaccine mandate program through their collective bargaining agent and meant that Defendants would not challenge their terminations or seek to remedy them, causing discrimination against the Plaintiffs and other similarly situated member pilots.

### Plaintiff Engstrom's Factual Summary

74.     Plaintiff Engstrom has faithfully employed as a pilot for United for 26 years. During such time, he has been and continues to be a dues-paying member of Defendants.

75.     Throughout the COVID-19 pandemic, Plaintiff Engstrom has loyally flown for United and followed its policies and measures which were designed to fight the spread of the COVID-19 virus. Such policies and procedures worked and allowed all flight crews and passengers to travel safely aboard the planes which he piloted.

76.     On August 6, 2021, United, without bargaining with Defendants, issued a company-wide vaccine mandate which required me to be vaccinated against COVID-19 or apply for an exemption from the vaccine as a reasonable accommodation under (a) Title VII, based upon religious objection; or (b) the ADA, due to a disability or medical condition.

77.     Plaintiff Engstrom qualified for exemption from United's COVID-19 vaccine policy under Title VII (due to his religious beliefs), the ADA (due to his medical condition), and the FCRA (due to his religious beliefs and medical condition).

78.     Plaintiff Engstrom applied for both medical and religious exemptions to United's COVID-19 mandate.

16

79. Based on the above, Plaintiff Engstrom qualified for or should have qualified for exemption from United's COVID-19 vaccine policy under Title VII, the ADA, and the FCRA.

80. Accordingly, Plaintiff Engstrom applied for both religious and medical exemptions.

81. Plaintiff Engstrom's request for religious exemption from the COVID-19 vaccine was granted in or about mid-September 2021; however, he was placed on an indefinite unpaid leave of absence ("LOA") as an "accommodation."

82. Prior to placing Plaintiff Engstrom on the unpaid LOA, United did not engage in the "interactive process" to determine whether or not other accommodations could be made which would enable him to perform the essential functions of his job without being vaccinated.

83. Plaintiff Engstrom's request for a medical exemption was denied by United on or about November 18, 2021, in part, because he was "already approved for a religious accommodation…". Plaintiff Engstrom inquired about an appeal process for the denial but was initially told by Jennifer Kemp from United's "Hub Help" that none existed. Additional inquiries by Plaintiff Engstrom about the appeal process to Mark Hassell from United's Human Resources Department went unanswered.

84. Plaintiff Engstrom, who believed his request for reasonable accommodation due to his medical condition/disability was wrongly denied and violative of the UPA, sought assistance from his designated ALPA/UA MEC representative. In turn, the Defendants' representative advised that Defendants could not provide assistance to Plaintiff Engstrom because they deemed matters of exemption to solely be between the employee and United.

85. Notably, prior to forcing Plaintiff Engstrom on the LOA, United permitted him and other pilots to fly without being vaccinated since the beginning of the COVID-19 pandemic, and

United did not, at any time within the last 18 months, contend that his lack of vaccination had created a safety risk for other crew members or passengers. Moreover, United allowed pilots of other airlines to fly in an airplane's cockpit jump seat and all passengers to fly without proof of vaccination or exemption from the vaccine. In other words, permitting Plaintiff Engstrom to fly without receiving the vaccine due to medical and/or religious exemption did not cause, nor would it cause, an undue hardship on the operations of United or a safety issue for his coworkers or passengers.

86.     During Plaintiff Engstrom's unpaid LOA, he suffered a loss of income; lost the opportunity to contribute toward retirement benefits; was forced to utilize his accrued vacation time; and other benefits as well. Furthermore, because Plaintiff Engstrom's request for medical exemption was initially denied on or about November 19, 2021, he could not use his accrued sick time and was without pay while out on the unpaid LOA. Based on such action, Plaintiff Engstrom was discriminated and retaliated against for requesting exemptions/accommodations under Title VII, the ADA, and FCRA.

87.     United's heavy-handed approach and willful refusal to provide further accommodation, along with the Defendants' willful failure to assist him and similarly situated pilots with grievances as a result of United's actions, caused Plaintiff Engstrom damages, including severe mental anguish. No person should be placed in such a gut-wrenching quandary by their employer or union when his right to work free from discrimination and retaliation is statutorily protected by federal and state law. Due to such action, Plaintiff Engstrom dual-filed a Charge of Discrimination with the EEOC and Florida Commission on Human Relations against United for

discrimination, failure to accommodate, and retaliation under Title VII, the ADA, and the FCRA, which was filed in the EEOC's Miami District Office (EEOC Charge No. 510-2022-01364).

88.     In addition to being discriminated and retaliated against by United in violation of Title VII, the ADA, and the FCRA, Plaintiff Engstrom was also discriminated against by Defendants.  Defendants, through their intentional policy decision not to become involved with the discriminatory actions of United or to fight for contractual and federally protected rights of its members, including that which had a disparate impact on those who exercised religious and medical rights, intentionally discriminated against Plaintiff Engstrom and others similarly situated.

89.     Defendants had a duty to represent its members, including Plaintiff Engstrom, to negotiate with United, and to help members grieve any unfair practices which violate the contract between ALPA and United.  Defendants willfully and intentionally failed to bargain with United or to otherwise challenge the COVID-19 vaccine exemption policy causing Plaintiff and others who are similarly situated to be discriminated against because of their religion and/or medical conditions.

90.     Defendants claimed that issues pertaining to religion/Title VII and disability/ADA were not issues subject to bargaining and were between individual employees and United. However, United's COVID-19 vaccine policy, including forcing those ALPA members who exercised their rights under Title VII, the ADA, and FCRA out on a mandatory unpaid LOA, naturally impacted basic contract terms such as pay, seniority, use of paid leave, and other benefits.

91.     United's COVID-19 policy had an unlawful disparate impact on its members who belong to protected classes under Title VII, the ADA, and the FCRA. Moreover, Defendants

intentionally discriminated against union members who were adversely impacted by United's unlawful policy by willfully choosing not to file grievances to correct the discrimination.

92.     Furthermore, Defendants' leadership, including Todd Insler, openly disparaged, and encouraged discriminatory treatment of those who sought exemption from the COVID-19 vaccine, including Plaintiff Engstrom.  Like United, Defendants have and continue to discriminate and retaliate against those who received exemption from the COVID-19 vaccine due to religious beliefs, medical condition, and/or has regarded them as disabled in violation of the law, including Plaintiff Engstrom.

### Plaintiff Shaw's Factual Summary

93.     Plaintiff Shaw has been employed as a pilot for United for 25 years. During such time, he was and continues to be a dues-paying member of Defendants.

94.     Throughout the COVID-19 pandemic, Plaintiff Shaw loyally flew for United and followed its policies and measures which were designed to fight the spread of the COVID-19 virus. Such policies and procedures worked and allowed all flight crews and passengers to travel safely aboard the planes which he captained.

95.     On August 6, 2021, United, without bargaining with Defendants, issued a company-wide vaccine mandate which required Plaintiff Shaw to be vaccinated against COVID-19 or apply for an exemption from the vaccine as a reasonable accommodation under (a) Title VII, based upon religious objection; or (b) the ADA, due to a disability or medical condition.

96.     Plaintiff Shaw qualified for exemption from United's COVID-19 vaccine policy under Title VII (due to his religious beliefs), the ADA (due to his medical condition), and the FCRA (due to his religious beliefs and medical condition).

97.     Plaintiff Shaw applied for both medical and religious exemptions to United's COVID-19 mandate.

98.     Plaintiff Shaw's requests for religious and medical exemptions from the COVID-19 vaccine mandate were granted on September 9,2021 and September 30,2021, respectively.

99.     After having his religious and medical exemptions granted, Plaintiff Shaw was placed on an indefinite unpaid LOA as an alleged "accommodation."

100.    Plaintiff Shaw was being treated differently than vaccinated pilots based upon his religion (Christian) and disability or was regarded as disabled by United and Defendants.

101.    Prior to placing Plaintiff Shaw on the unpaid LOA, United did not engage in the "interactive process" under the ADA or FCRA to determine whether or not other accommodations could be made which would enable him to perform the essential functions of his job without being vaccinated.

102.    Notably, United permitted Plaintiff Shaw to fly without being vaccinated since the beginning of the pandemic, and United did not, at any time prior to the implementation of its COVID-19 Vaccine mandate, contend that Plaintiff Shaw's lack of vaccination, at the time, created a safety risk for other crew members or passengers.

103.    Moreover, United allowed pilots of other airlines to fly in an airplane's cockpit jump seat and all passengers to fly without proof of vaccination or exemption from the vaccine. In other words, permitting Plaintiff Shaw to fly without receiving the vaccine due to medical and/or religious exemption did not cause, nor could it cause, an undue hardship on the operations of United or a safety issue for his coworkers or passengers.

104.    During his unpaid LOA, Plaintiff Shaw suffered a loss of income; lost the opportunity to contribute toward retirement benefits; was forced to utilize his accrued sick time; and, if he did not return to work, he would have lost seniority and other benefits as well. In essence, such retaliatory adverse action was the equivalent of a termination. At the very least, United callously placed Plaintiff Shaw and other pilots in a position in which they were forced to make a choice between two impossible and life-altering alternatives, which Plaintiff Shaw agonized over each day while being placed on unpaid LOA. If Plaintiff Shaw rejected the COVID-19 vaccine, he would have, in essence, abandoned his career with United and been subjected to a constructive discharge. By doing so, he would have faced the devastating guilt of "selfishly" placing his health and sincerely held religious beliefs above his ability to provide for his family. On the other hand, if vaccinated, he could return to work, his career would be restored, but he would put his life at risk and face the relentless shame of having defied his God.

105.    Ultimately, after being on unpaid LOA for approximately three months, nearly exhausting all available leave time, and facing the equivalent of being unemployed, Plaintiff Shaw finally succumbed to the pressure and "took the jab" so he could return to work and financially support his family.

106.    United's heavy-handed approach and willful refusal to provide further accommodation, along with the Defendants' willful failure to assist him and similarly situated pilots with grievances as a result of United's actions, caused Plaintiff Shaw damages, including severe mental anguish. No person should be placed in such a gut-wrenching quandary by their employer or union when his right to work free from discrimination and retaliation is statutorily protected by federal and state law. Due to such action, Plaintiff Shaw dual-filed a Charge of

Discrimination with the EEOC and Florida Commission on Human Relations against United for discrimination, failure to accommodate, and retaliation under Title VII, the ADA, and the FCRA, which was filed in the EEOC's Miami District Office (EEOC Charge No. 510-2022-01362).

107.     In addition to being discriminated and retaliated against by United in violation of Title VII, the ADA, and the FCRA, Plaintiff Shaw was also discriminated against by Defendants. Defendants, through their intentional policy decisions not to become involved with the discriminatory actions of United or to fight for contractual and federally protected rights of its members, including that which had a disparate impact on those who exercised religious and medical rights, intentionally discriminated against Plaintiff Shaw and others similarly situated.

108.     Defendants had a duty to represent its members, including Plaintiff Shaw, to negotiate with United, and to help members grieve any unfair practices which violate the contract between ALPA and United.  Defendants willfully and intentionally failed to bargain with United or to otherwise challenge the COVID-19 vaccine exemption policy causing Plaintiff and others who are similarly situated to be discriminated against because of their religion and/or medical conditions.

109.     Defendants claimed that issues pertaining to religion/Title VII and disability/ADA were not issues subject to bargaining and were between individual employees and United. However, United's COVID-19 vaccine policy, including forcing those ALPA members who exercised their rights under Title VII, the ADA, and FCRA out on a mandatory unpaid LOA, naturally impacted basic contract terms such as pay, seniority, use of paid leave, and other benefits.

110.     United's COVID-19 policy had an unlawful disparate impact on its members who belong to protected classes under Title VII, the ADA, and the FCRA. Moreover, Defendants

intentionally discriminated against union members who were adversely impacted by United's unlawful policy by willfully choosing not to file grievances to correct the discrimination.

111.    Furthermore, Defendants' leadership, including Todd Insler, openly disparaged, and encouraged discriminatory treatment of those who sought exemption from the COVID-19 vaccine, including Plaintiff Shaw.  Like United, Defendants have and continue to discriminate and retaliate against those who received exemption from the COVID-19 vaccine due to religious beliefs, medical condition, and/or has regarded them as disabled in violation of the law, including Plaintiff Shaw.

112.    Plaintiffs have retained the law firm of Wilson McCoy, P.A. to represent them in this matter and have agreed to pay said firm a reasonable attorneys' fee for its services.

## COMPLIANCE WITH ADMINSTRATIVE PRE-REQUISITES

113.    On or about January 28, 2022, Plaintiff Engstrom timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Florida Commission on Human Relations (the "FCHR"), describing the actions and inactions of the Defendants and alleging discrimination based on religion, and disability/handicap or perceived disability/handicap, failure to accommodate, and retaliation (the "Engstrom Charge"). A copy of the Engstrom Charge is attached hereto as **Exhibit A**.

114.    On or about January 28, 2022, Plaintiff Shaw timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual filed with the Florida Commission on Human Relations (the "FCHR"), describing the actions and inactions of Defendants and alleging discrimination based on religion, and disability/handicap or perceived

disability/handicap, failure to accommodate, and retaliation (the "Shaw Charge").  A copy of the Shaw Charge is attached hereto as **Exhibit B.**

115.    More than one hundred eighty (180) days passed since the filing of the Engstrom Charge and the Shaw Charge without any issued determination by the EEOC or the FCHR.

116.    On August 23, 2022, Plaintiff Engstrom received a "Right to Sue" Notice from the EEOC, providing Plaintiff Engstrom with 90 days to file suit against the Defendants under Title VII and the ADA (the "Engstrom RTS").  A copy of the Engstrom RTS is attached hereto as **Exhibit C**.

117.    On August 23, 2022, Plaintiff Shaw received a "Right to Sue" Notice from the EEOC, providing Plaintiff Shaw with 90 days to file suit against the Defendants under Title VII and the ADA (the "Shaw RTS"). A copy of the Shaw RTS is attached hereto as **Exhibit D**.

118.    The FCHR has not, as of the date of this filing, issued any determination as to either the Engstrom Charge or the Shaw Charge.

119.    Because the FCHR failed to reach a determination as to the merits of either the Engstrom Charge or the Shaw Charge within one hundred eighty (180) days since the date of their filing, the Engstrom Charge and Shaw Charge are statutorily cloaked with a presumptive finding of "cause," pursuant to §760.11(8) of the FCHR. As such, Plaintiffs are authorized to proceed with the instant suit, pursuant to §760.11(4) (a), Florida Statutes.

120.    Plaintiff has, therefore, satisfied any and all administrative prerequisites to the filing of this action pursuant to Title VII, the ADA, and the FCRA.

## COUNT I
## DISPARATE TREATMENT IN VIOLATION OF
## THE FCRA (RELIGION)

121.   Plaintiffs hereby readopt, reallege, and incorporates the allegations set forth in Paragraphs 1-120, above.

122.   Section 760.10(3)(a)-(c) of the FCRA makes it an unlawful employment practice for a labor organization:

(a)   To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b)   To limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way that would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(c)   To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

123.   Plaintiffs are each Christians with sincerely held religious beliefs.  Due to such religious beliefs, Plaintiffs are within a protected class under the FCRA.

124.   At all times material hereto, Plaintiffs were pilots for United and dues paying members of the Defendants.

125.    During their employment with United and as members of Defendants, Plaintiffs were subjected to discrimination by United and the Defendants, deprived employment opportunities, and had their status as employees adversely affected by United and Defendants because of their religion.

126.    Moreover, Defendants caused or attempted to cause United to discriminate against Plaintiffs in violation of the FCRA because of their religion.

127.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

128.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on religion.

129.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

**COUNT II:**
**FAILURE TO ACCOMMODATE IN VIOLATION OF**
**THE FCRA (RELIGION)**

130.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

131.    Plaintiffs were each qualified individuals with sincerely held religious beliefs who could perform the essential functions of their jobs either with or without a reasonable accommodation.

132.     Due to their religious beliefs, Plaintiffs sought religious exemption from United's COVID-19 vaccine mandate.

133.     Although Plaintiffs' request for exemption from the mandate was granted, United unilaterally imposed an alleged accommodation on them in the form of an unpaid LOA without engaging in an interactive process.

134.     Defendants unlawfully deemed the Plaintiffs and other similarly situated individuals as not qualified for their positions because they had not received the experimental COVID-19 vaccine.

135.     Defendants had a duty to assist Plaintiffs and other similarly situated individuals in seeking accommodation from a United policy which infringed upon the terms and conditions of their employment.

136.     Defendants, by their failure to assist the Plaintiffs and similarly situated employees who sought religious exemption from the COVID-19 vaccine mandate with accommodations which would allow them to work despite their religious exemptions, resulted in Plaintiffs being unlawfully denied religious accommodations.

## COUNT III:
## RETALIATION IN VIOLATION OF
## THE FCRA (RELIGION)

137.     Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

138.     Section 760.10(3)(a)-(c) of the FCRA makes it an unlawful employment practice for a labor organization:

(a)   To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b)   To limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way that would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(c)   To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

139.   Section 760.10(7) of the FCRA also prohibits retaliation against employees who object to discrimination in violation of the FCRA.  Specifically, that section states:

(7) It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

29

140.    Plaintiffs engaged in statutorily protected conduct under the FCRA by opposing United's COVID-19 policy which discriminated against them because of their sincerely held religious beliefs.

141.    Plaintiffs further engaged in statutorily protected activity by requesting accommodation from the COVID-19 vaccine due to their sincerely held religious beliefs.

142.    Subsequent to engaging in protected activity, Plaintiffs were subjected to materially adverse action by United and the Defendants, as described above, in retaliation.

143.    Moreover, Plaintiffs opposed the materially adverse action they suffered and, after doing so, Defendants, in retaliation, subjected them to further materially adverse action by failing to represent them and allowing or causing United to engage in discrimination because of their religious beliefs and exercise of same.

144.    Plaintiffs suffered materially adverse actions of a type that would dissuade a reasonable employee from engaging in statutorily protected activity.

145.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

146.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**COUNT IV:**
**DISPARATE IMPACT IN VIOLATION OF**
**THE FCRA (RELIGION)**

147.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

148.   Section 760.10(3)(a)-(c) of the FCRA makes it an unlawful employment practice for a labor organization:

>  (a)   To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.
>
>  (b)   To limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way that would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.
>
>  (c)   To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

149.   Plaintiffs are informed and believe and thereon allege that Defendants' policy not to file grievances on United's COVID-19 vaccination mandate and LOA policy which interfered with the terms and conditions of employment (and which operated as an adoption of United's discriminatory policies) had an adverse and disproportionate impact on them because of their religion.

150.   Defendants' policy was neither manifestly job-related nor consistent with business necessity.

151.    Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

152.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

153.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on religion.

154.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

## COUNT V:
## DISPARATE TREATMENT IN VIOLATION OF
## THE FCRA (HANDICAP)

155.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

156.    Section 760.10(3)(a)-(c) makes it an unlawful employment practice for a labor organization:

> (a)   To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

> (b)   To limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way that would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee or as an applicant for employment, because of such

individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(c)   To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

157.   Plaintiffs were qualified individuals who could perform the essential functions of their positions either with or without a reasonable accommodation.

158.   Plaintiffs are each handicap or perceived as handicap by Defendants.  Plaintiffs are thus within a protected class under the Florida Civil Rights Act ("FCRA").

159.   At all times material hereto, Plaintiffs were pilots for United and dues paying members of the Defendants.

160.   During their employment with United and as members of Defendants, Plaintiffs were subjected to discrimination by Defendants, deprived employment opportunities, and had their statuses as employees adversely affected by United and Defendants because of their handicaps perceived handicaps.

161.   Moreover, Defendants caused or attempted to cause United to discriminate against Plaintiffs in violation of the FCRA because of their handicaps or perceived handicaps.

162.   As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

163.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on handicap.

164.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

**COUNT VI:**
**FAILURE TO ACCOMMODATE IN VIOLATION OF**
**THE FCRA (HANDICAP)**

165.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

166.    Plaintiffs were each qualified individuals with handicaps who could perform the essential functions of their jobs either with or without a reasonable accommodation.

167.    Due to their handicaps, Plaintiffs sought exemption from United's COVID-19 vaccine mandate.

168.    Although Plaintiffs' request for exemption from the mandate due to their handicaps were granted, United unilaterally imposed an alleged accommodation on them in the form of an unpaid LOA without engaging in an interactive process.

169.    Defendants unlawfully deemed the Plaintiffs and other similarly situated individuals as not qualified for their positions because they were not vaccinated from COVID-19.

170.    Defendants had a duty to assist Plaintiffs and other similarly situated individuals in seeking accommodation for those with handicaps from a United policy which infringed upon the terms and conditions of their employment and prevented them from working.

171.    Defendants, by their failure to assist the Plaintiffs and similarly situated employees who sought exemption from the COVID-19 vaccine mandate with accommodations which would

allow them to work despite their handicaps, resulted in Plaintiffs being unlawfully denied accommodations.

172.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

173.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on handicap.

174.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

## COUNT VII:
## RETALIATION IN VIOLATION OF
## THE FCRA (HANDICAP)

175.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

176.    Plaintiffs engaged in statutorily protected conduct under the FCRA by opposing United's COVID-19 policy which discriminated against them because of their handicaps or perceived handicaps.

177.    Plaintiffs further engaged in statutorily protected activity by requesting accommodation from the COVID-19 vaccine due to their handicaps.

178.    Subsequent to engaging in protected activity, Plaintiffs were subjected to materially adverse action by United and the Defendants, as described above, in retaliation.

179.    Moreover, Plaintiffs opposed the materially adverse action they suffered and, after doing so, Defendants, in retaliation, subjected them to further materially adverse action by failing to represent them and allowing or causing United to engage in discrimination because of their handicaps.

180.    Plaintiffs suffered materially adverse actions of a type that would dissuade a reasonable employee from engaging in statutorily protected activity.

181.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

182.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

## COUNT VIII:
## DISPARATE IMPACT IN VIOLATION OF
## THE FCRA (HANDICAP)

183.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1-120, above.

184.    Plaintiffs are informed and believe and thereon allege that Defendants' policy not to file grievances on United's COVID-19 vaccination mandate and LOA policy which interfered with the terms and conditions of employment (and which operated as an adoption of United's discriminatory policies) had an adverse and disproportionate impact on them because of their handicaps.

185.    Defendants' policy was neither manifestly job-related nor consistent with business necessity.

186.    Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

187.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

188.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on handicap.

189.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**COUNT IX:**
**DISPARATE TREATMENT IN VIOLATION OF**
**TITLE VII (RELIGION)**

190.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

191.    Plaintiffs are each Christians with sincerely held religious beliefs.  Due to such religious beliefs, Plaintiffs are within a protected class under Title VII.

192.    At all times material hereto, Plaintiffs were pilots for United and dues paying members of the Defendants.

193.    During their employment with United and as members of Defendants, Plaintiffs were subjected to discrimination by United and the Defendants, deprived employment opportunities, and had their status as employees adversely affected by United and Defendants because of their religion.

194.    Moreover, Defendants caused or attempted to cause United to discriminate against Plaintiffs in violation of Title VII because of their religion.

195.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

196.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on sex.

197.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

**COUNT X:**
**FAILURE TO ACCOMMODATE IN VIOLATION OF**
**TITLE VII (RELIGION)**

198.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

199.    Plaintiffs were each qualified individuals with handicaps who could perform the essential functions of their jobs either with or without a reasonable accommodation.

200.    Due to their religious beliefs, Plaintiffs sought religious exemption from United's COVID-19 vaccine mandate.

201.    Although Plaintiffs' request for exemption from the mandate was granted, United unilaterally imposed an alleged accommodation on them in the form of an unpaid LOA without engaging in an interactive process.

202.    Defendants unlawfully deemed the Plaintiffs and other similarly situated individuals as not qualified for their positions because they were not vaccinated from COVID-19.

203.    Defendants had a duty to assist Plaintiffs and other similarly situated individuals in seeking accommodation from a United policy which infringed upon the terms and conditions of their employment.

204.    Defendants, by their failure to assist the Plaintiffs and similarly situated employees who sought religious exemption from the COVID-19 vaccine mandate with accommodations which would allow them to work despite their religious exemptions, resulted in Plaintiffs being unlawfully denied religious accommodations.

**COUNT XI:**
**RETALIATION IN VIOLATION OF**
**TITLE VII (RELIGION)**

205.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

206.    Plaintiffs engaged in statutorily protected conduct under Title VII by opposing United's COVID-19 policy which discriminated against them because of their sincerely held religious beliefs.

207.    Plaintiffs further engaged in statutorily protected activity by requesting accommodation from the COVID-19 vaccine due to their sincerely held religious beliefs.

208.    Subsequent to engaging in protected activity, Plaintiffs were subjected to materially adverse action by United and the Defendants, as described above, in retaliation.

209.    Moreover, Plaintiffs opposed the materially adverse action they suffered and, after doing so, Defendants, in retaliation, subjected them to further materially adverse action by failing to represent them and allowing or causing United to engage in discrimination because of their religious beliefs and exercise of same.

210.    Plaintiffs suffered materially adverse actions of a type that would dissuade a reasonable employee from engaging in statutorily protected activity.

211.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

212.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**COUNT XII:**
**DISPARATE IMPACT IN VIOLATION OF**
**TITLE VII (RELIGION)**

213.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

214.    Section 703 of Title VII, 42 U.S.C. § 2000e-2(C) provides that it is an unlawful employment practice for a labor organization –

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

215.    Plaintiffs are informed and believe and thereon allege that Defendants' policy not to file grievances on United's COVID-19 vaccination mandate and LOA policy which interfered with the terms and conditions of employment (and which operated as an adoption of United's discriminatory policies) had an adverse and disproportionate impact on them because of their religion.

216.    Defendants' policy was neither manifestly job-related nor consistent with business necessity.

217.    Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

218.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

219.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on religion.

220.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**COUNT XIII:**
**DISPARATE TREATMENT IN VIOLATION OF**
**THE ADA**

221.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

222.    Plaintiffs were qualified individuals who could perform the essential functions of their positions either with or without a reasonable accommodation.

223.    Plaintiffs are each disability or perceived as disability by Defendants.  Plaintiffs are thus within a protected class under the Americans with Disabilities Act ("ADA").

224.    At all times material hereto, Plaintiffs were pilots for United and dues paying members of the Defendants.

225.    During their employment with United and as members of Defendants, Plaintiffs were subjected to discrimination by Defendants, deprived employment opportunities, and had their statuses as employees adversely affected by United and Defendants because of their disabilities or perceived disabilities.

226.    Moreover, Defendants caused or attempted to cause United to discriminated against Plaintiffs in violation of the ADA because of their disabilities or perceived disabilities.

227.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

228.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on sex.

229.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

**COUNT XIV:**
**FAILURE TO ACCOMMODATE IN VIOLATION OF**
**THE ADA**

42

230.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

231.    Plaintiffs were each qualified individuals with disabilities who could perform the essential functions of their jobs either with or without a reasonable accommodation.

232.    Due to their disabilities, Plaintiffs sought exemption from United's COVID-19 vaccine mandate.

233.    Although Plaintiffs' request for exemption from the mandate due to their disabilities were granted, United unilaterally imposed an alleged accommodation on them in the form of an unpaid LOA without engaging in an interactive process.

234.    Defendants unlawfully deemed the Plaintiffs and other similarly situated individuals as not qualified for their positions because they were not vaccinated from COVID-19.

235.    Defendants had a duty to assist Plaintiffs and other similarly situated individuals in seeking accommodation for those with disabilities from a United policy which infringed upon the terms and conditions of their employment and prevented them from working.

236.    Defendants, by their failure to assist the Plaintiffs and similarly situated employees who sought exemption from the COVID-19 vaccine mandate with accommodations which would allow them to work despite their disabilities, resulted in Plaintiffs being unlawfully denied accommodations.

237.    As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount

to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

238.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on disability.

239.    Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

## COUNT XV:
## RETALIATION IN VIOLATION OF
## THE ADA

240.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

241.    Plaintiffs engaged in statutorily protected conduct under the ADA by opposing United's COVID-19 policy which discriminated against them because of their disabilities or perceived disabilities.

242.    Plaintiffs further engaged in statutorily protected activity by requesting accommodation from the COVID-19 vaccine due to their disabilities.

243.    Subsequent to engaging in protected activity, Plaintiffs were subjected to materially adverse action by United and the Defendants, as described above, in retaliation.

244.    Moreover, Plaintiffs opposed the materially adverse action they suffered and, after doing so, Defendants, in retaliation, subjected them to further materially adverse action by failing to represent them and allowing or causing United to engage in discrimination because of their disabilities.

245.    Plaintiffs suffered materially adverse actions of a type that would dissuade a reasonable employee from engaging in statutorily protected activity.

246.     As a direct, legal and proximate result of Defendants' retaliation, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Plaintiffs further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

247.     Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

## COUNT XVI:
## DISPARATE IMPACT IN VIOLATION OF
## THE ADA

248.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1-120, above.

249.     Plaintiffs are informed and believe and thereon allege that Defendants' policy not to file grievances on United's COVID-19 vaccination mandate and LOA policy which interfered with the terms and conditions of employment (and which operated as an adoption of United's discriminatory policies) had an adverse and disproportionate impact on them because of their disabilities.

250.     Defendants' policy was neither manifestly job-related nor consistent with business necessity.

251.     Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

252.     As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

253.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on disability.

254.    Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

## COUNT XVII:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

255.    Plaintiffs hereby readopt, reallege, and incorporate the allegations set forth in Paragraphs 1-120, above.

256.    Defendants conduct was intentional or reckless, that is, they intended their behavior when they knew or should have known that emotional distress of the Plaintiffs would likely result.

257.    Defendants conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community.

258.    Defendants caused the Plaintiffs emotional distress.

259.    The emotional distress suffered by Plaintiffs was severe.

## DECLARATORY RELIEF ALLEGATIONS

260.    A present and actual controversy exists between Plaintiffs and Defendants concerning their rights and respective duties. Plaintiffs contend that Defendants violated their rights under Title VII, the ADA, and the FCRA. Plaintiffs are informed and believe and thereon allege that the Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

261.    Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

262.    No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

263.   If this Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.   For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2.   For lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3.   For compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

4.   For punitive damages in an amount to be determined at trial;

5.   For interest on lost wages, compensation, and damages, including pre- and post judgment interest and an upward adjustment for inflation;

6.   For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

7.   For reasonable attorneys' fees and costs of suit;

8.   For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 16th day of November, 2022.

Respectfully submitted,

*s/ Nathan McCoy*
Nathan McCoy, Esq.
Florida Bar No. 676101
Molly Mullen
Florida Bar No. 1038812
WILSON MCCOY, P.A.
Point 100 Building,
100 E. Sybelia Ave, Ste. 205
Maitland, Florida 32751
Telephone: (407) 803-5400
Facsimile: (407) 803-4617
E-Mail:nmccoy@wilsonmccoylaw.com
        mmullen@wilsonmccoylaw.com

**ATTORNEYS FOR PLAINTIFFS**