UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES E. ENGSTROM and RICHARD SHAW,

        Plaintiffs,

v.                                        Case No.: 6:22-cv-2130-WWB-RMN

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and UNITED AIRLINES, INC.,

        Defendants.
                                    /

## ORDER

THIS CAUSE is before the Court on Defendant Air Line Pilots Association, International's ("**ALPA**") Motion to Transfer Venue (Doc. 35), ALPA's Motion to Dismiss (Doc. 36), and Defendant United Airlines, Inc.'s ("**United**") Motion to Dismiss (Doc. 48),[1] and Plaintiffs' Responses in Opposition (Doc. Nos. 44, 47, 50) thereto.

**I.    BACKGROUND**

Plaintiffs, James Engstrom and Richard Shaw, work as pilots for United. (Doc. 23, ¶¶ 9–10). Plaintiffs are also members of ALPA, which is a national labor union and was, at all relevant times, Plaintiffs' certified collective bargaining representative. (*Id.* ¶¶ 9–12). Engstrom lives in Orlando, Florida and commutes to the United HUB in Newark, New

---

[1] United's filing fails to comply with this Court's January 13, 2021 Standing Order. In the interests of justice, the Court will consider the filing, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

Jersey. (*Id.* ¶ 130). Shaw lives in Oviedo, Florida and commutes to the Houston, Texas United HUB. (*Id.* ¶ 162).

In response to the Covid-19 pandemic, United announced that it would require all United employees to receive a Covid-19 vaccine within five weeks of a vaccine being granted full approval by the FDA or five weeks of September 20, 2021, which ever came first. (*Id.* ¶ 30). United also informed employees that they must receive at least the first dose of a vaccine by September 27, 2021, and upload proof of vaccination to a database. (*Id.* ¶¶ 31–32). Employees that did not comply and were not granted an accommodation were terminated. (*Id.* ¶ 33).

United employees seeking medical or religious exemptions from the requirement had to submit such requests on or before August 31, 2021. (*Id.* ¶¶ 51, 53–54). Although some untimely medical exemptions were considered after this deadline, religious exemptions that were not timely submitted were categorically denied. (*Id.* ¶¶ 55–56). After a request was submitted, United questioned employees regarding their religious beliefs or medical histories and sought additional documentation, sometimes without providing adequate time to obtain such documents. (*Id.* ¶¶ 60–62). For those requests that were granted, United informed employees that they would be indefinitely placed on unpaid leave without benefits, which United stated could last up to six years. (*Id*. ¶¶ 67, 78). For pilots, the leave "would last 'until the risk of COVID is low enough that [United] deem[s] it safe' or until the pandemic 'meaningfully' subsides." (*Id.* ¶ 69). Non-customer-facing employees, however, were told that the leave would last until United could take mitigation measures, such as testing requirements. (*Id.* ¶ 70). All remaining unvaccinated pilots were placed on unpaid leave beginning November 11, 2021. (*Id.* ¶ 123).

Plaintiffs allege that ALPA failed to challenge the vaccination program and limited the reach of member grievances to avoid challenges to the vaccination program before ultimately ceasing to process such grievances and requiring complaining members to self-file without support from ALPA staff. (*Id.* ¶¶ 82–85, 111). ALPA stated that the requirement was a job qualification, as opposed to a condition of employment, and therefore United could unilaterally require vaccination under the collective bargaining agreement. (*Id.* ¶ 107). On September 28, 2021, the ALPA did file a grievance on behalf of approximately twelve pilots that were not vaccinated and did not receive an exemption, arguing that the pilots should be treated as unqualified for their position and therefore subject to a lesser sanction than termination. (*Id.* ¶ 118). An arbitrator ultimately determined that vaccination status under the mandate was not a pilot qualification. (*Id.* ¶ 126).

Engstrom alleges that he was entitled to exemptions from the vaccine mandate due to both sincerely held religious beliefs and his medical condition. (*Id.* ¶ 133). Accordingly, he applied for both exemptions. (*Id.* ¶¶ 134, 136). Engstrom's request for religious exemption was granted in September 2021 and he was placed on an indefinite unpaid leave of absence. (*Id.* ¶ 137). His request for medical exemption was denied, in part, because his request for religious exemption was granted. (*Id.* ¶ 139).

Shaw also alleges that he was entitled to exemption due to both his sincerely held religious beliefs and his medical condition and sought exemption on both grounds. (*Id.* ¶¶ 165–166). Shaw was granted both religious and medial exemptions in September 2021, and placed on an indefinite unpaid leave of absence. (*Id.* ¶¶ 167–168). After three

3

months, Shaw had exhausted nearly all his available leave time and made the decision to receive the vaccination in order to return to work. (*Id.* ¶ 177).

In December 2021, Plaintiffs filed claims with the EEOC and Florida Commission on Human Relations against United for discrimination in violation of various state and federal laws. (*Id.* ¶¶ 124, 150, 180). Plaintiffs filed charges of discrimination against ALPA on January 28, 2022. (*Id.* ¶¶ 194–195). Plaintiffs received right to sue notices from the EEOC as to their claims against ALPA on August 23, 2022, and have not received a determination as to their claims against United or any decision from the Florida Commission on Human Relations. (*Id.* ¶¶ 196–199). Accordingly, Plaintiff filed this lawsuit against United and ALPA alleging claims for discrimination and retaliation in violation of the Florida Civil Rights Act ("**FCRA**"), Fla. Stat. § 760.01 *et seq.*, Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("**ADA**"), 42 U.S.C. § 12111 *et seq*, as well as claims for intentional infliction of emotional distress, and civil conspiracy. (*See generally id.*).

## II.     DISCUSSION

United moves to the dismiss the claims against it for lack of personal jurisdiction, improper venue, and failure to state a claim. ALPA seeks to transfer this case to the Northern District of Illinois and also argues that the Amended Complaint should be dismissed for failure to state a claim. Plaintiffs oppose all the requested relief.

Although the Supreme Court typically requires courts to address questions of personal jurisdiction before questions of venue, "when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).

Therefore, "[i]f a venue issue renders the personal jurisdiction problem moot, . . . consideration of venue before personal jurisdiction is appropriate." *U.S. ex rel. Norshield Corp. v. Scarborough*, 620 F. Supp. 2d 1292, 1294 (M.D. Ala. 2009) (quotation omitted). Accordingly, because a transfer of venue to the Northern District of Illinois, as requested, would render the personal jurisdiction issue moot, the Court will first consider the question of venue.

ALPA moves to transfer the Amended Complaint for improper venue under Title VII and the ADA. Employment claims brought pursuant to Title VII and the ADA are subject to the exclusive venue provisions set forth in 42 U.S.C. § 2000e-5(f)(3). *Pinson v. Rumsfeld*, 192 F. App'x 811, 816–17 (11th Cir. 2006); 42 U.S.C. § 12117(a). Pursuant to Title VII's venue provision, venue is proper (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"; (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered"; or (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]" 42 U.S.C. § 2000e-5(f)(3). "The venue provisions of § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and that the more general provisions of § 1391 are not controlling in such cases." *Pinson*, 192 F. App'x at 817. The provisions of § 2000e-5(f)(3) govern the entire case, even when non-Title VII and ADA claims are present, and the burden is on the plaintiff to establish that venue in the forum is proper. *Id.*

In their Response, Plaintiffs argue that venue is proper under the first prong because the effects of the unlawful employment practice were felt in this District.

5

However, Plaintiffs direct this Court to non-binding cases for the proposition that the effect of the discrimination alone is sufficient to confer venue, but that proposition is not supported by the cases that Plaintiffs cite. Rather, in each of those cases the courts extended venue to the situs of the effect of the injury because that was the location where the plaintiffs in those cases were employed. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000); *Shipley v. Hypercom Corp.*, No. 1:09-CV-0265, 2009 WL 10664453, at *5 (N.D. Ga. May 28, 2009); *Berry v. Potter*, No. CIV 04-2922, 2006 WL 335841, at *3 (D. Ariz. Feb. 10, 2006); *Cox v. Nat'l Football League*, No. 97 C 3741, 1997 WL 619839, at *2 (N.D. Ill. Sept. 29, 1997). By contrast, there is no dispute that Plaintiffs are not employed in this District. Although they begin their commute to work in this District, sometimes utilizing United's aircrafts, they have not alleged that they work in this District or are employed to work in this District or that their presence in this District is in any way connected to their employment. Thus, the cases Plaintiffs cite are readily distinguishable.

Instead, courts in this Circuit have determined that the location of a plaintiff's residence, even if the discriminatory effects are felt there, is not sufficient to confer proper venue under the statute. *See, e.g.*, *Wyse v. Granholm*, No. 1:22-CV-2561, 2023 WL 4353166, at *4–5 (N.D. Ga. Apr. 5, 2023); *Bonnett v. U.S. Dep't of Agric.*, No. 20-60562, 2020 WL 12584127, at *2 (S.D. Fla. Oct. 27, 2020); *Sardinas v. CRST Expedited, Inc.*, No. 1:19-cv-20530, 2019 WL 13255943, at *3 (S.D. Fla. Nov. 25, 2019); *Martin v. Ingalls Shipbuilding*, No. CA 13-0274, 2013 WL 5350880, at *4 & n.2 (S.D. Ala. Sept. 24, 2013). In this case, where Plaintiffs' presence in Florida was wholly unrelated to their

6

employment, the Court finds that Plaintiffs have failed to show that the allegedly unlawful employment practice was committed in this District.

To the extent Plaintiffs make the half-hearted argument that but for the Covid-19 policy they would have worked in this District, Plaintiffs' argument consists of one sentence, without citation to either record or legal authority in support of this argument. Accordingly, the Court will not address Plaintiffs' argument as to the third-prong of the venue provision. *See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Therefore, the Court finds that Plaintiffs have failed to establish that venue is proper for their claims in this District.

Pursuant to § 1406(a), when venue is found to be lacking the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Here, ALPA does not request dismissal. Instead, ALPA argues that transfer to the United States District Court for the Northern District of Illinois is in the interests of justice. Although Plaintiffs oppose such transfer, they do so based on the argument that venue is proper in this Court. Plaintiffs do not dispute that venue would be proper in the Northern District of Illinois or seek dismissal in lieu of transfer in the event venue is found to be improper.

Here, venue would be proper in the Northern District of Illinois because several of the disputed decisions were made there and many of the relevant records are maintained

7

there. The Court also finds that a transfer is proper for the just and efficient resolution of these proceedings. Therefore, the Court will exercise its discretion to transfer this case instead of dismissing for improper venue.

Having determined that transfer to the Northern District of Illinois is proper, United's motion to dismiss on personal jurisdiction grounds is moot. (*See* Doc. 48 at 4–6 (noting that United is subject to personal jurisdiction in Illinois)). The merits of United's Motion will not be discussed further.

### III.   CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Air Line Pilots Association, International's Motion to Transfer Venue (Doc. 35) is **GRANTED**.
2. The Clerk is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Northern District of Illinois, Eastern Division for all further proceedings and close this file.

**DONE AND ORDERED** in Orlando, Florida on November 6, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record